IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| D.B., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO. 1:25-cv-01634-AT |
| v. | ) | |
| | ) | |
| TRAVEL LODGE OLD NATIONAL, LLC and HIMA ENTERPRISES, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S NOTICE TO TAKE VIDEOTAPED 30(b)(6) DEPOSITION**

**AND**

**NOTICE TO PRODUCE**

TO: **Travel Lodge Old National, LLC and**
**Lexicon Hospitality, LLC**
c/o Patrick B. Moore, Esq.
Weinberg, Wheeler, Hudgins, Gunn & Dial
3344 Peachtree Rd, N.E.
Suite 2400
Atlanta, GA 30326

PLEASE TAKE NOTICE, pursuant to Fed.R.Civ.P. 30(b)(6), that beginning at 10:00 a.m. EDT on Thursday, September 17, 2026 at Weinberg, Wheeler, Hudgins, Gunn & Dial, 3344 Peachtree Rd, N.E., Suite 2400, Atlanta, GA 30326, and continuing from hour to hour and day to day until adjourned, counsel for Plaintiff shall proceed to take the deposition of designated representatives from

Travel Lodge Old National, LLC ("TLON") and Lexicon Hospitality, LLC upon oral examination before an officer authorized by law to administer oaths and to take depositions. The deposition will be videotaped. The deposition will be taken for all purposes allowed by the Federal Rules of Civil Procedure. Said representatives should have knowledge of the following:

**Topics for Deposition**

1.

TLON's responses to discovery in these cases; including the creation, existence, retention, location, and production of materials produced or requested in discovery; the methods, procedures, and efforts TLON took to search for documents, materials, or information responsive to Plaintiffs' discovery requests; and the methods, procedures, and efforts TLON took to respond to Plaintiffs' interrogatories.

2.

TLON and Lexicon's knowledge of all individuals who may have knowledge of, or serve as witnesses to, any facts or circumstances relevant to Plaintiffs' claims.

3.

The experience TLON and Lexicon's owner(s) and manager(s) have in the hotel and motel business.

4.

Any assets or properties TLON and Lexicon own or have ever owned.

5.

The Travel Lodge hotel on Old National, including when TLON and Lexicon owned, occupied, managed, or controlled the property, and the periods of time for each, which entity employed the hotel staff and management, and any other entity's or person's involvement in the property during the period in which TLON and Lexicon owned the property.

6.

The area surrounding the Travel Lodge on Old National, including whether the area was known as a high-crime area at any time during TLON and Lexicon's ownership, whether sex is often sold on Old National (i.e., the area surrounding the property), and whether drugs are often sold on Old National (i.e., the area surrounding the property).

7.

How the property was run during TLON and Lexicon's ownership, including the cost of rooms (and the different costs depending on the day, time of year, etc. if the costs vary); whether there were any room rental restrictions (such as age or type of payment) and what information was required to rent a room, the check-in, check-out, and room-assignment policies and procedures, any training programs

regarding Defendants' room rental, check-in, and check-out practices in effect at any time during Defendants' ownership of the property, the room cleaning procedures, the room rental length (hourly, nightly, weekly, etc.), the hotel guest's responsibilities, if any, defendants' responsibilities, if any, a description of the clientele, the guest policy for the property, the staffing during the daytime and nighttime as well as the hotel's operating hours, the general job descriptions and duties for each staffing role (e.g., front desk, manager, housecleaning, maintenance, etc.), the recordkeeping practices for the property; and any advertising and business development efforts for the hotel.

8.

TLON and Lexicon's employees, independent contractors, and security service providers who worked at the property, as well as TLON and Lexicon's policies for them, including TLON and Lexicon's hiring policies during the entire period they owned the property, names, job title(s), job performance, job description(s), responsibilities related to the property, dates of employment or contractual relationship, and contact information for all individuals who worked at the property or were employed by TLON and Lexicon during the entire period they owned the property, how TLON and Lexicon came to hire each of the employees or independent contractors who worked at the property, any policies or procedures related to any security service provider engaged by TLON and Lexicon for or

related to the property during the entire period they owned the property, names, nature and scope of duties or services, terms of engagement, and dates of engagement for all security service provider who provided services to TLON and Lexicon during the entire period they owned the property; and how TLON and Lexicon came to engage or contract with each security service provider who provided services to TLON and Lexicon during the entire period they owned the property.

9.

Prior crime at the property and criminal activity on the property during TLON and Lexicon's ownership, including any information TLON and Lexicon knew about crime at its property and the surrounding area and when and how TLON and Lexicon learned these things, the actions or efforts TLON and Lexicon made to learn about crime at its property and the in surrounding area, all documents that were maintained regarding crime at the property and the surrounding area and when TLON and Lexicon learned about or created these documents, and all instances during TLON and Lexicon's ownership of the property where they made any report to any third party, including, but not limited to, law enforcement agencies, franchisors, insurance companies, or financial lenders, of any criminal activity occurring at the property.

10.

TLON and Lexicon's safety and security policies, procedures, and training at/for the property, including any policies, procedures, or training related to guest safety, crime prevention, or crime deterrence, the policies and procedures regarding removing persons from the property for safety and security concerns, information, if any, provided to potential guests about the safety and security of the property and the surrounding area, the policies and procedures related to reporting crime, including suspected crime, on the property both internally and to law enforcement or other relevant authorities, and any safety and security steps that were discussed for the property but not implemented, if any.

11.

TLON and Lexicon's policies, procedures, and training related to sex trafficking and prostitution for the property, including, all compliance, safety, training, and operational policies and procedures related to prostitution or sex trafficking awareness, identification, and prevention for the property, all employee training programs, education initiatives, or awareness campaigns related to prostitution or sex trafficking identification and prevention for the property, all policies and procedures related to reporting suspected instances of prostitution or sex trafficking on the property, including internal reporting mechanisms and protocols for contacting law enforcement or other relevant authorities, and all

oversight mechanisms in place to ensure compliance with relevant laws, regulations, industry standards, and internal policies related to prostitution and sex trafficking.

12.

TLON and Lexicon's actions related to crime on the property, including all actions taken by TLON and Lexicon to deter or prevent criminal activity, sexual assaults, rapes, commercial sex activity, prostitution, pimping, indecent exposure, sex trafficking, or other sex crimes occurring at the property, whether anyone developed a safety and security plan for the property, and if so, who, what the safety and security plan for the property was, whose responsibility it was to implement the safety and security plan and what each person's role was, whether there were cameras, what the cameras showed, who looked at the cameras, and any policies or procedures regarding review of the camera feed(s), whether security patrols occurred on the property, whose responsibility it was to conduct the patrols, and the frequency in which the patrols were conducted, whether there was a "do not rent list," the criteria for getting on any such list, how the list was maintained and checked, and where the list is at present, whether incident reports, weekly security reports, or other similar reports were done and whether such reports were maintained, the property's exterior security features (e.g., lighting, gates, fencing, panic poles, etc.); whether discussions were had with law enforcement regarding

preventing or deterring crime on the property; what law enforcement outreach was done, if any, and what the results were, what cooperation, if any, occurred with law enforcement, and all partnerships or collaborations with external organizations or agencies involved in addressing, preventing, or deterring prostitution, sex trafficking, and other crime.

13.

TLON and Lexicon's policies, procedures, and practices related to guest feedback and online reputation management, including all policies, procedures, and practices related to TLON and Lexicon's review and response process for guest complaints and negative online reviews and Medallia surveys, whether Defendants received or reviewed Google reviews, Trip Advisor reviews, or other similar reviews, as well as Medallia survey responses, what it learned from any reviews or feedback it did receive, and how it responded, TLON and Lexicon's policies, procedures, and practices related to addressing guest concerns, and all efforts TLON and Lexicon made during their ownership of the property to address and mitigate negative guest feedback.

14.

Plaintiffs' statuses on the property, including whether TLON and Lexicon rented rooms to Plaintiffs and received money for those rooms, whether TLON and Lexicon rented rooms to Plaintiffs' traffickers and received money for those

rooms, whether TLON and Lexicon rented rooms to "johns" that ultimately paid Plaintiffs' traffickers for the right to have sex with Plaintiffs (this topic does not imply that Defendants knew how the room was going to be used), whether Plaintiffs were allowed to be on TLON and Lexicon's property at any time, and whether TLON and Lexicon sold Plaintiffs anything at any time, and if so, what, when, and where.

15.

TLON and Lexicon's knowledge regarding Plaintiffs' sex trafficking that occurred on the property, including whether during their visits to the property, TLON and Lexicon knew or recognized Plaintiffs, Plaintiffs' traffickers, or Plaintiffs' "johns;" TLON and Lexicon's interactions with Plaintiffs, Plaintiffs' traffickers, and the "johns;" TLON and Lexicon's observations of Plaintiffs, their traffickers, and the "johns;" TLON and Lexicon's communications regarding Plaintiffs, their traffickers, and the "johns;" TLON and Lexicon's interactions with responding officers to the property to the extent those interactions were related to Plaintiffs or their traffickers; and all non-privileged investigations TLON and Lexicon performed related to Plaintiffs' sex trafficking.

16.

Whether TLON and Lexicon admit that it was reasonably foreseeable that commercial sex would occur at its property.

17.

TLON and Lexicon's decisions to file for bankruptcy, including who made those decisions and why.

**Notice to Produce at Deposition**

You are further commanded to bring with you at the time and place of the deposition the following material which is within your possession, custody, or control:

1.

All documents, records, emails, spreadsheets, correspondence, videos, photographs and/or other records or items of any kind related to the above-stated topics that have not been previously produced by TLON.

2.

All documents, records, emails, spreadsheets, correspondence, videos, photographs and/or other records or items of any kind that you reviewed in preparation to answer questions about the above-stated topics.

This 2nd day of September, 2026.

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Peter A. Law
Georgia Bar No. 439655
pete@lawmoran.com
E. Michael Moran
Georgia Bar No. 521602
mike@lawmoran.com
Denise D. Hoying
Georgia Bar No. 236494
denise@lawmoran.com
*Attorneys for Plaintiff*

**LAW & MORAN**
563 Spring Street
Atlanta, GA 30308
(404) 814-3700

# CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing ***Notice to Take Videotaped 30(b)(6) Deposition*** has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the above mentioned pleading was prepared using Times New Roman font of 14 point size.

Respectfully submitted,

**LAW & MORAN**

*/s/ Denise D. Hoying*
Denise D. Hoying
Georgia Bar No. 236494
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| D.B., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO. 1:25-cv-01634-AT |
| v. | ) | |
| | ) | |
| TRAVEL LODGE OLD NATIONAL, LLC and HIMA ENTERPRISES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a true and correct copy of ***Notice to Take Videotaped 30(b)(6) Deposition*** by filing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to:

Daniel C. Headrick
Johnson Evans & Headrick, P.C.
2690 Cobb Parkway SE
Suite A5-342
Smyrna, GA 30080

Patrick B. Moore
Sarah J. Unatin
Weinberg, Wheeler, Hudgins, Gunn & Dial
3344 Peachtree Rd, N.E.
Suite 2400
Atlanta, GA 30326

This 2nd day of September, 2026.

**LAW & MORAN**

/s/ Denise Hoying
Denise D. Hoying
Georgia Bar No. 236494
denise@lawmoran.com
*Attorney for Plaintiff*

563 Spring Street, N.W.
Atlanta, Georgia 30308
(404) 814-3700