IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| D.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 1:25-cv-01634-AT |
| TRAVEL LODGE OLD NATIONAL, | ) | |
| LLC, LEXICON HOSPITALITY, LLC, | ) | |
| and HIMA ENTERPRISES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff in the above-styled action, and pursuant to Fed.R.Civ.P. 15(a) and this Court's September 10, 2026 Order, hereby files her Amended Complaint as follows:

1.

This case arises out of the minor sex trafficking of Plaintiff D.B. at Defendants' motels. Given the nature of the case, and her status as a minor at the time of the events at issue, D.B. is identified in this Complaint only by her initials to prevent public disclosure of her name. Plaintiff's counsel has previously disclosed D.B.'s full name to defense counsel.

## PARTIES, JURISDICTION, AND VENUE

2.

D.B. is a citizen of the United States of America, is a resident of the State of Georgia, and consents to the jurisdiction of this Court.

3.

At all times relevant to this complaint, Defendant Travel Lodge Old National, LLC ("TLON") and Defendant Lexicon Hospitality, LLC ("Lexicon") owned, managed, supervised, operated, oversaw, controlled the operation of, and were inextricably connected to the renting of rooms at the Travelodge by Wyndham located at 2471 Old National Highway, College Park, Fulton County, Georgia 30349 ("Travelodge"), from which they benefited financially.

4.

At all times relevant to this complaint, Defendant HIMA Enterprises, Inc. ("HIMA") owned, managed, supervised, operated, oversaw, controlled the operation of, and was inextricably connected to the renting of rooms at the Econo Lodge located at 4874 Old National Hwy, College Park, Fulton County, Georgia 30337 ("Econo Lodge"), from which it benefited financially.

5.

TLON was a Georgia limited liability company with its principal place of business at 3290 Trammel Drive, Cumming, Georgia. Pursuant to O.C.G.A. § 14-4-161(b), service can be made on TLON by serving its registered agent at the time that it was dissolved: Richard F. Evins, 420 Ridgecrest Road, Lagrange, Georgia 30240.

6.

Jurisdiction and venue are proper as to TLON, and TLON was properly served with process in this action.

7.

Lexicon was a Georgia limited liability company with its principal place of business at 3290 Trammel Drive, Cumming, Georgia. Pursuant to O.C.G.A. § 14-4-161(b), service can be made on Lexicon Hospitality by serving its registered agent at the time that it was dissolved: Richard F. Evins, 420 Ridgecrest Road, Lagrange, Georgia 30240.

8.

Jurisdiction and venue are proper as to Lexicon, and Lexicon was properly served with process in this action.

9.

HIMA Enterprises, Inc. was a Georgia corporation with its principal place of business at 4874 Old National Highway, Atlanta, Georgia. Pursuant to O.C.G.A. § 14-4-161(b), service can be made on HIMA by serving its registered agent at the time that it was dissolved: Kanti B. Patel, 506 Cypress Point, McDonough, Georgia 30253.

10.

Jurisdiction and venue are proper as to HIMA, and HIMA was properly served with process in this action.

11.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under 18 U.S.C. 1595(a).

12.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Fulton County, Georgia, within the Northern District of Georgia, Atlanta Division.

## SEX TRAFFICKING ALLEGATIONS

13.

Minor sex trafficking includes recruiting, enticing, harboring, transporting, obtaining, maintaining, patronizing, or soliciting a person for a commercial sex act who is under the age of 18. 18 U.S.C. § 1591(a), *et seq*. It also includes financially benefitting from participation in a venture that engages in those violations. *Id.* Plaintiff was a victim of minor sex trafficking at Defendants' motels at all times relevant to this Complaint.

14.

Defendants knew or should have known of the existence of sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' adoption of the Palermo Protocol, to prevent, suppress, and punish trafficking in persons.

15.

Defendants knew or should have known that Atlanta was a hub of sex trafficking and that the crime was prevalent in the city, including at Defendants' motels. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of, if not the, largest illegal sex trafficking economies in the country. In 2007, Atlanta's sex trafficking economy was worth

$290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000.

16.

Defendants, for a fee, provided a market for the sale of children, a private and anonymous venue for the minor D.B. to be sold for sex at their motels.

17.

Hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

18.

Plaintiff was trafficked for sex at the Travelodge and Econo Lodge from 2011 to 2013. Plaintiff's traffickers routinely took her between the two motels for the purposes of selling her for sex, with each motel stay lasting anywhere from 3 days to a month or longer.

19.

While she was trafficked at the Travelodge and Econo Lodge, Plaintiff exhibited numerous well-known and visible signs of a minor sex trafficking victim in the common areas, of which Defendants knew or should have known, including her age and inappropriate appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, soliciting male patrons, and monitoring and control by her traffickers, who were both older men.

20.

While she was trafficked at the Travelodge and Econo Lodge, Plaintiff's rooms evidenced numerous well-known and visible signs of sex trafficking of which Defendants knew or should have known.

21.

While Plaintiff was trafficked at the Travelodge and Econo Lodge, many older men visited her sex traffickers' rooms each day, each for short periods of time. Defendants knew or should have known that the number of daily, older male visitors to the room was obviously indicative of minor sex trafficking, and Defendants negligently failed to control or monitor the frequent male visitors.

22.

While Plaintiff was trafficked at the Travelodge and Econo Lodge, several other victims were also trafficked for sex at each motel, which have been described as "an open market for sex." As a result, a large number of buyers frequented the motels each day.

23.

Plaintiff and other trafficking victims, some even younger than D.B., frequently appeared throughout the motels and on the motel premises and approaches wearing very little clothing, and solicited dates for sex in the motel parking lots.

24.

Defendants knew or should have known of the frequent presence of men who loitered in the Travelodge and Econo Lodge parking lots to meet and have sex with minor victims of sex trafficking who were forced to openly solicit men in the Travelodge and Econo Lodge parking lots, including Plaintiff.

25.

Plaintiff interacted with the motel staff and managers at the Travelodge and Econo Lodge, who knew or should have known Plaintiff was a minor victim of sex trafficking occurring at the motels.

26.

Plaintiff's traffickers frequently visited the front desk of the Travelodge and Econo Lodge and interacted with motel employees while buyers were in the room having sex with Plaintiff.

27.

Employees at the Travelodge and Econo Lodge accommodated and were familiar with Plaintiff's traffickers, as her traffickers stayed at these motels while trafficking other minor victims there in the months preceding Plaintiff's minor sex trafficking.

28.

Employees at the Travelodge and Econo Lodge visited the rooms used for Plaintiff's sex trafficking, including housekeeping employees, who would take tips from Plaintiff's trafficker to keep quiet about the minor sex trafficking that was occurring in the rooms.

29.

The Travelodge and Econo Lodge and their approaches were well known for crime, prostitution, and minor sex trafficking.

30.

Defendants knew or should have known of other minor sex trafficking, sex crimes, and other crimes at the motels and in their immediate vicinity before Plaintiff was trafficked for sex at the Travelodge and Econo Lodge, which are located in close proximity to one another. Defendants knew or should have known of violent crimes occurring on their premises and approaches, yet negligently did nothing.

31.

Defendants had actual or constructive knowledge of publicly available online reviews of the Travelodge and Econo Lodge reporting widespread prostitution and crime occurring at the motels, yet negligently did nothing.

32.

The Travelodge and its employees had a pattern and practice of allowing minor sex trafficking at the hotel. Another trafficking victim, J.S., was also trafficked for years at the Travelodge.

33.

During J.S.'s trafficking, her grandmother, who lived nearby, went to the Travelodge multiple times with flyers and asked employees if they had seen J.S. A

hotel employee confirmed to J.S.'s grandmother that she rented rooms to J.S.'s pimp and that J.S. was being forced to sell sex for money.

34.

The Travelodge employee told J.S.'s grandmother that she felt bad for J.S. and the other children being sold for sex at the Travelodge, so she bought food for them from McDonalds. Unfortunately, J.S. was not at the Travelodge when her grandmother went looking for her there.

35.

J.S. was eventually able to escape from her trafficker. After her escape, J.S. encountered her trafficker in September of 2014 at a restaurant where she was eating with her grandmother. Her trafficker told J.S. that he was staying in room 116 at the Travelodge and J.S.'s grandmother immediately called the police. The G.B.I. set up a sting and arrested J.S.'s trafficker in room 116 at the Travelodge the next morning. He was charged with human trafficking, pandering, and aggravated child molestation.

36.

TLON and Lexicon's general manager at the Travelodge knew that minor sex trafficking and prostitution were rampant at the Travelodge while she worked there from 2011 to 2013. This general manager brought it to the attention of the

owners of TLON and Lexicon, but they told her to ignore it as long as the traffickers were paying for their rooms.

37.

Defendants knew or should have known of the following Travelodge reviews:

a) A June 1010 review stating: “prostitute and drug-dealer looking types seem to have a stake at this location.”

b) A May 2011 review stating: “The area was pretty shady and we didn't feel safe in the room unless we had a chair and our suitcases up against the door. Would not recommend or stay at again.”

c) A October 2011 review stating: “we had ‘Ladies of the night’ Prostitues working the room next door it was a little unsavory..”

d) A September 2012 review stating: “Believe the stories above about having to leave your ID for an iron and the board. Believe about the hookers. We didn't see roaches but we did see general spiders and black bugs in the room. The room knobs and locks are cheap and they broke off during our stay so be careful about that. We will not be back to this hotel. Stay somewhere else.”

e) A September 2012 review stating: “I booked it because it was cheap, and

after reading the reviews I thought people were just being picky. Boy was I wrong!!! Dirty hotel falling apart, dirty people, drug deals going on all night!"

f) An October 2012 review stating: "we werent in the room 30 minutes before there was about 10 people in front of our door because they were staying on each side of us, smoking WEED on the balcony, it came in our room from the air conditioner. I called the front desk and said there was people smoking weed and if he didnt call the cops I was, well he called them and they came and busted them with more than just WEED!...It was not a good experience and kinda scarey if u ask me." A response to this review was posted by "Joy G, Manager at Travelodge by Wyndham College Park."

g) An April 2013 review stating: "The outside was busy with ladies selling there body,and a guy told me that two guys were out robbing people so I tried to stay in my room." A response to this review was posted by "Joy H, Manager at Travelodge by Wyndham College Park."

h) A June 2013 review stating: "They have prostitution around the hotel and drugs no one wants there kids around those kind of things just a horrible experience". A response to this review was posted by "Joy H, Manager

at Travelodge by Wyndham College Park."

i) A July 2013 review stating: "when entering the room we turned back the cover and there was a used condom at the head of the bed. then my mate dropped his phone and we pulled the mattress up to reach the phone and there was drug paraphernalia under the mattress with other condoms. there was a lot of traffic around the property. females standing outside the rooms with skimpy clothes on. it seems as if this location is for locals to live in weekly. very uncomfortable..beware..."

j) A September 2013 review stating: "I couldn't even stay one night. When I arrived their was hookers, pimps and crack heads all around the room , the front office and looking around d peoples vehicles."

k) A September 2013 review stating: "Everything was terrible. This place was in terrible condition, stinky, cable TV offered less than 15 channels, and there was constant traffic in a nearby room, noticeable by a coded knock ta-tata-ta-ta...ta-ta, for several hours into the night. I'll let your imagination decided what was going on. Stay away at all costs."

l) An April 2014 review stating: "my little sister steps outside to smoke a cigarette and a stranger walks up to her out of no were asking if she wants to buy 'DOPE' how safe is this for anyone I was embarrassed and

scared at the same damn time. . . . PLEASE DO NOT STAY HERE!! 'NOT SAFE AT ALL'".

m) A May 2014 review stating: "Do not consider staying t this location. Drugs, Prostitutes, and extremely poor service."

n) A May 2014 review stating: "Do not be fooled by the photos. The overall apperance is fine but you will not get a very safe feeling from this property. It appears to be the place for the local working girls to make a living."

o) A May 2014 review stating: "This hotel obviously caters to drug dealers and prostitutes. All night people were hanging outside.A man asked me if I had weed for him to buy, Another man was selling stuff he stole from a store."

38.

Defendants knew or should have known of the following Econo Lodge reviews:

a) A November 2012 review stating: "We walked outside to go and get dinner and there were HOOKERS all over the parking lot hanging off the balcony of the upstairs rooms and trying to get whatever man walked in their path!!!! This is obviously a hotel where the prostitutes do ALL

THEIR BUSSINES!!! I will NEVER EVER STAY THERE AGAIN!!! EVER!! . . . I will pay more $ next time for NO HOOKERS!!!! NEVER AGAIN!!! WILL WE STAY THERE, HOOKERS HOOKERS HOOKERS YUCK HOOKERS ALL OVER THE PLACE!!!"

b) A June 2013 review stating: "Only stay at this awful place if you want to see HOOKERS and drug addicts all over the place. . . . I can't believe this hotel is even allowed to stay open. Very scary!!!!"

c) A September 2013 review stating: "when I pulled into the location, I instantly saw drug users, prostitutes and drug dealers roaming the property. . . . All of the doors face outside so I could see everybody from the users, prostitutes and alcoholics just lounging about because they all had their doors open."

d) A May 2014 review stating: "A guest in the parking lot made a comment to my friend 'hey you are pretty do you want to make some money' hahaha i wasn't there to verify but that's what she said. But this hotel is just a no-no unless you have a brave heart and some street cred!!"

e) A 2014 review stating: "There is no question that this place is known for prostitution. Ladies of the night were standing outside the doors as we passed. One 'client' yelled out to us, 'If I were you, I'd be scared too.' . . .

I put my phone on my chest, hugged my daughter, and listened as ‘business’ went on in the room to the sides and above us. Business was very good that particular evening and did not end until 5am. . . . It was somewhere between a halfway house and a prison, but at least in a prison there would be better security!”

f) A 2015 review stating: “Prostitute kingdom if that's what you like if you not use to this kinda atmosphere then keep it moving str8 hood if you not used 2 don't stop.”

g) A 2016 review stating: “This place is a trap!! Prositutes...dope boys and drug dealers. I was even solicited on the way to the ice machine.”

39.

As a direct and proximate result of Defendants’ acts and omissions, D.B. suffered substantial physical, emotional, and psychological harm and other damages.

## **DEFENDANTS’ ROLES**

40.

At all times relevant hereto, TLON and Lexicon jointly owned, operated, maintained, controlled, and managed the Travelodge.

41.

At all times relevant hereto, HIMA owned, operated, maintained, controlled, and managed the Econo Lodge.

42.

TLON and Lexicon are directly and vicariously liable for the acts and omissions of their agents and employees as discussed herein.

43.

HIMA is directly and vicariously liable for the acts and omissions of its agents and employees as discussed herein.

44.

Whenever reference is made in this complaint to any act, deed, or conduct of a Defendant, the allegation is that the Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendant.

**COUNT I**
**STATUTORY LIABILITY: SEX TRAFFICKING**
**AT THE TRAVELODGE**
**18 U.S.C. § 1595**

45.

Plaintiff incorporates Paragraphs 1 through 44 as if fully restated herein

verbatim.

46.

Defendants TLON and Lexicon knew or should have known of the steps to take to prevent the Travelodge from being used as a venue for Plaintiff's minor sex trafficking, and knew or should have known about the Department of Homeland Security ("DHS") guidelines to identify warning signs that indicate the presence of sex trafficking on the motel premises such as:

a) persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b) persons who lack freedom of movement or are constantly monitored;

c) persons who have no control over or possession of money or ID;

d) persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e) requests for room or housekeeping services (additional towels, new linens, etc.), but denial of motel staff entry into the room;

f) the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g) extended stay with few or no personal possessions in the room;

h) excessive amounts of sex paraphernalia in rooms (condoms, lubricant,

lotion, etc.);

i) the same person reserves multiple rooms;

j) a room is rented hourly, less than a day, or for an atypical extended stay;

k) attempts to sell items to or beg from patrons or staff;

l) cars in the parking lot regularly parked backward, so the license plates are not visible;

m) loitering and solicitation of male patrons;

n) waiting at a table or bar and picked up by a male (trafficker or customer);

o) persons asking staff or patrons for food or money; and

p) persons taking cash or receipts left on tables.

47.

In violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), Defendants TLON and Lexicon knowingly benefitted from participation in a venture at the Travelodge that Defendants TLON and Lexicon knew or should have known engaged in acts in violation of the TVPRA.

48.

Defendants TLON and Lexicon knowingly benefitted from Plaintiff's minor sex trafficking by receiving a revenue generated by the operation of the Travelodge, including the revenue generated for the rooms in which D.B., a minor, was trafficked.

49.

Defendants TLON and Lexicon participated in a motel venture and knew or should have known that the motel venture violated the TVPRA. Defendants TLON and Lexicon further engaged in a sex trafficking venture by and through the acts and omissions of its employees and managers, and in providing to Plaintiff's trafficker the necessary venue for Plaintiff's minor sex trafficking.

50.

The venture in which Defendants TLON and Lexicon participated was in or affecting interstate commerce.

51.

Defendants TLON and Lexicon knew or should have known the venture engaged in acts in violation of the TVPRA because Defendants TLON and Lexicon, their agents, employees, and representatives, knew that Plaintiff, a minor, was being sold for sex at the Travelodge and knew it was renting rooms her to

trafficker for the purposes of trafficking her, but did nothing.

52.

Defendants TLON and Lexicon knew or should have known the venture engaged in acts in violation of the TVPRA because Defendants TLON and Lexicon, their agents, employees, and representatives knew or should have known of other sex trafficking, including minor sex trafficking, and sex crimes at the motel before and while Plaintiff was trafficked for sex at the Travelodge.

53.

Defendants TLON and Lexicon are directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of their employees, agents, and representatives.

54.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendants TLON's and Lexicon's participation in this minor sex trafficking venture.

55.

Defendants TLON and Lexicon are liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

56.

All Defendants are jointly and severally liable for damages arising from the indivisible injuries they caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

**COUNT II**
**STATUTORY LIABILITY: SEX TRAFFICKING**
**AT THE ECONO LODGE**
**18 U.S.C. § 1595**

57.

Plaintiff incorporates Paragraphs 1 through 56 as if fully restated herein verbatim.

58.

Defendant HIMA knew or should have known of the steps to take to prevent the Travelodge from being used as a venue for Plaintiff's minor sex trafficking, and knew or should have known about the Department of Homeland Security ("DHS") guidelines to identify warning signs that indicate the presence of sex trafficking on the motel premises such as:

a) persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b) persons who lack freedom of movement or are constantly monitored;

c) persons who have no control over or possession of money or ID;

d) persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e) requests for room or housekeeping services (additional towels, new linens, etc.), but denial of motel staff entry into the room;

f) the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g) extended stay with few or no personal possessions in the room;

h) excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i) the same person reserves multiple rooms;

j) a room is rented hourly, less than a day, or for an atypical extended stay;

k) attempts to sell items to or beg from patrons or staff;

l) cars in the parking lot regularly parked backward, so the license plates are not visible;

m) loitering and solicitation of male patrons;

n) waiting at a table or bar and picked up by a male (trafficker or customer);

o) persons asking staff or patrons for food or money; and

p) persons taking cash or receipts left on tables.

59.

In violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), Defendant HIMA knowingly benefitted from participation in a venture at the Econo Lodge that Defendant HIMA knew or should have known engaged in acts in violation of the TVPRA.

60.

Defendant HIMA knowingly benefitted from Plaintiff's minor sex trafficking by receiving a revenue generated by the operation of the Econo Lodge, including the revenue generated for the rooms in which D.B., a minor, was trafficked.

61.

Defendant HIMA participated in a motel venture and knew or should have known that the motel venture violated the TVPRA. Defendant HIMA further engaged in a sex trafficking venture by and through the acts and omissions of its employees and managers, and in providing to Plaintiff's trafficker the necessary venue for Plaintiff's minor sex trafficking.

62.

The venture in which Defendant HIMA participated was in or affecting interstate commerce.

63.

Defendant HIMA knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant HIMA, their agents, employees, and representatives, knew that Plaintiff, a minor, was being sold for sex at the Econo Lodge and knew they was renting rooms her to trafficker for the purposes of trafficking her, but did nothing.

64.

Defendant HIMA knew or should have known the venture engaged in acts in violation of the TVPRA because Defendant HIMA, its agents, employees, and representatives knew or should have known of other sex trafficking, including minor sex trafficking, and sex crimes at the motel before and while Plaintiff was trafficked for sex at the Econo Lodge.

65.

Defendant HIMA is directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of its employees, agents, and representatives.

66.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendant HIMA's participation in this minor sex trafficking venture.

67.

Defendant HIMA is liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

68.

All Defendants are jointly and severally liable for damages arising from the indivisible injuries they caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

**DAMAGES**

69.

Plaintiff incorporates Paragraphs 1 through 68 as if fully restated herein verbatim.

70.

As a proximate and foreseeable result of the Defendants' negligence and violations of the TVPRA, Plaintiff sustained personal injuries, mental and

emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiff brings each and every claim permissible under federal law against Defendants for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under federal law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under federal law, including, but not limited to:

a) Personal injuries;

b) Past, present and future conscious pain and suffering;

c) Loss of enjoyment of life;

d) Medical expenses;

e) Mental anguish and emotional distress;

f) Loss of past, present, and future wages;

g) Incidental expenses;

h) All special, compensatory, economic, punitive, and other damages permissible under Georgia law and Federal law; and

i) Consequential damages to be proven at trial.

71.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Defendants and their employees were willful or wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

72.

Defendants' actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to recover her necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-68(e) and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Federal and Georgia statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to her and against Defendants for the following:

a) Process issue as provided by law;

b) Plaintiff be awarded actual damages in amounts to be shown at trial from the Defendants;

c) Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendants;

d) Plaintiff be awarded a trial by jury; and

e) Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 14th day of September, 2026.

Respectfully submitted,

**LAW & MORAN**

/s/ Denise D. Hoying
Peter A. Law
Georgia Bar No. 439655
pete@lawmoran.com
E. Michael Moran
Georgia Bar No. 521602
mike@lawmoran.com
Denise D. Hoying
Georgia Bar No. 236494
denise@lawmoran.com
Attorneys for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710

**ANDERSEN, TATE & CARR, P.C.**

/s/ Patrick J. McDonough
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
Attorneys for Plaintiff

**ANDERSEN, TATE & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing ***Amended Complaint for Damages*** has been prepared with one of the following font and point selections approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14 point size.

Respectfully submitted,

**LAW & MORAN**

/s/ Denise D. Hoying
Peter A. Law
Georgia Bar No. 439655
pete@lawmoran.com
E. Michael Moran
Georgia Bar No. 521602
mike@lawmoran.com
Denise D. Hoying
Georgia Bar No. 236494
denise@lawmoran.com
Attorneys for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| D.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 1:25-cv-01634-AT |
| TRAVEL LODGE OLD NATIONAL, | ) | |
| LLC, LEXICON HOSPITALITY, LLC, | ) | |
| and HIMA ENTERPRISES, INC., | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a true and correct copy of the foregoing ***Amended Complaint for Damages*** by filing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to:

Daniel C. Headrick
Johnson Evans & Headrick, P.C.
2690 Cobb Parkway SE
Suite A5-342
Smyrna, GA 30080

Patrick B. Moore
Sarah J. Unatin
Weinberg, Wheeler, Hudgins, Gunn & Dial
3344 Peachtree Rd, N.E.
Suite 2400
Atlanta, GA 30326

This 14th day of September, 2026.

Respectfully submitted,

**LAW & MORAN**

/s/ Denise D. Hoying
Peter A. Law
Georgia Bar No. 439655
pete@lawmoran.com
E. Michael Moran
Georgia Bar No. 521602
mike@lawmoran.com
Denise D. Hoying
Georgia Bar No. 236494
denise@lawmoran.com
Attorneys for Plaintiff

**LAW & MORAN**
563 Spring Street, NW
Atlanta, Georgia 30308
Phone: (404) 814-3700
Facsimile: (404) 842-7710